(121 App. Div. 641.)

STALLO v. HUMPHREYS.

(Supreme Court, Appellate Division, First Department. October 25, 1907.)

1. APPEAL—INFERENCES.
    On appeal from a judgment dismissing the complaint before plaintiff rested, all reasonable inferences are to be drawn from the evidence in his favor.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4020–4128.]

2. PRINCIPAL AND AGENT—EVIDENCE.
    Where, in an action for a balance due on the price of notes sold, defendant's testimony in plaintiff's behalf showed that defendant obtained possession of the notes through one who dealt with the seller without disclosing defendant, and that defendant exercised dominion over the notes in the prosecution of a joint venture or partnership with such person for their purchase, it was improper to strike out such testimony, since, if there was a joint venture or partnership, each of the parties thereto in the prosecution thereof was the agent of the other.

Appeal from Special Term.

Action by Edmund K. Stallo against George H. Humphreys. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and HOUGHTON, JJ.

Henry C. Quinby (George Edwin Joseph, of counsel), for appellant.
White & Otheman (Edward R. Otheman, of counsel), for respondent.

CLARKE, J. This is an appeal from a judgment dismissing the complaint upon the trial. The action was brought by the assignee of one Joseph C. Richards. The complaint alleges that on or about the 15th day of June, 1903, one Joseph C. Richards sold and delivered to the defendant, through one Robert S. Campbell, acting for and on behalf of said defendant, nine promissory notes secured by mortgage on certain real property in the state of Ohio, which notes were of the fair and reasonable value of $15,000, which said sum the defendant agreed to pay, and of which said notes the defendant became the sole owner and holder; that of said purchase price the sum of $9,000 was paid, leaving a balance of $6,000 unpaid thereon.

Upon the trial Richards testified: That he owned certain notes secured by Cincinnati property of the face value of $18,000, which, with interest at the time in question, amounted to $24,000 or $25,000. That he needed money to buy in a certain manufacturing plant in

which he was interested. That he had a conversation with Campbell, who was a friend of his, in which he told him the situation, and that all that he had practically available to raise the money needed for this purpose were those mortgage notes, and that he was negotiating to get a loan on them from the Oriental Bank. That Campbell said to him: "Why don't you sell me those notes, and shave them, and I will buy them? You can get more money that way than on the loans. If you buy that factory, you will have to have some working capital to begin with." That Richards said to Campbell: "I don't see how you can. You haven't got the money, because it would have to be a cash transaction, as my option on this factory is only 60 days." That Campbell said: "I will satisfy you tomorrow that I can do it. I inherited some bonds from my father, which I can turn into cash." The next day Campbell showed Richards certain bonds, stating: "All I have to do is to convert these bonds into cash. It will take me about 10 or 15 days to convert these bonds, and then I will pay you the cash." Richards told him: "That is all right, so long as you can pay me in cash in time so that I can avail myself of the option; and I have about 30 or 40 days to run on that option." To which Campbell replied: "All right." Thereafter Richards indorsed and delivered the notes to Campbell. That subsequently he had received on the purchase price of these notes from Campbell $9,000, and there is still $6,000 due on the purchase price.

So far, then, as Richards' testimony is concerned, it will be seen that his transactions were entirely with Campbell, and that Campbell undoubtedly deceived him, having claimed to have inherited certain bonds which he intended to sell and raise the money quickly to pay Richards, when it is in evidence from the rest of the testimony that these bonds so claimed to have been inherited were Humphreys' property, which had been delivered by Humphreys to Campbell.

Humphreys, the defendant, was called by the plaintiff, and he testified that he had a conversation with Campbell in regard to certain promissory notes secured by mortgages on property in Cincinnati; that Campbell told him some man had notes which were approximately worth $24,000, and was willing to sell them, if he could get cash quickly, for the sum of $20,000, "and he was very anxious to have me go into the transaction with him on account of the $4,000 profit, which he thought would be very speedily taken on my foreclosing this mortgage"; that he came to an agreement with Campbell as to their respective interests in these notes, if purchased. Humphreys agreed to put in $7,500, and Campbell agreed to put in the same, and he was going to get somebody else to put in $5,000; and Humphreys agreed, if Campbell could not get the other man to put in $5,000, that he would put up an extra $5,000, making $12,500, which was to be his share, and Campbell's was to be the balance. Humphreys gave Campbell certain bonds, and subsequently received the notes which had belonged to Richards, and brought suit thereon and foreclosed the mortgages in Cincinnati. Humphreys testified that he supposed at the time that Campbell had an interest in the purchase of these notes. "The fact turned out that I furnished all the money, but at the time the transaction was started he agreed to furnish a part of it, $7,500. That

was the only relation he had to the transaction, as a proposed joint purchaser with me. At the time when these mortgage notes came into my possession, I didn't know whom the notes then belonged to, and he did; and he was to do the transaction under an arrangement that he was to put up part of the money."

From this evidence it appears that Campbell deceived Humphreys, as well as Richards; the result of the transaction being that Humphreys received possession of and exercised control over Richards' notes, and brought actions and foreclosed mortgages under them, and that Richards received only $9,000. Upon this state of the proof, and before the plaintiff had rested, the learned court struck out Humphreys' testimony and then dismissed the complaint.

The appellant in his brief claims that the complaint was broad enough to include an agency of any description, whether arising out of the ordinary one of principal and agent, or out of that of a joint venture, or out of that of partnership and also that Humphreys, the defendant, was an undisclosed principal in the transaction, but had identified himself and confirmed his relations with the enterprise by his own testimony. The respondent claims that there was an absolute failure of proof that Campbell was acting as defendant's agent at the time of the alleged purchase from Richards, or that Campbell agreed to pay Richards any sum whatever for the notes.

It is true that the evidence to sustain the allegation in the complaint of the agreement to pay $15,000 for the notes is weak, consisting of the statement by Richards: "I received on the purchase price of these notes $9,000, and there is still $6,000 due on the purchase price." This testimony embodies a conclusion of the witness, rather than a statement of fact as to the agreement; but, so far as this point is concerned, it should be pointed out that the dismissal was not at the close of the plaintiff's case, and that no such ground was taken upon the trial, and that upon a dismissal under such circumstances all reasonable inferences are to be drawn in favor of the plaintiff. What occurred was that the learned court struck out all of Humphreys' testimony upon the ground that it contained no proof that Campbell was his agent in the transaction, and, as there was no proof of any direct dealings between Humphreys and Richards, that there was nothing to sustain the allegations of a sale by Richards to Humphreys. It appears to me that the action of the learned court in striking out the testimony of Humphreys was not justified. Upon his own statements he had obtained possession of and exercised dominion over notes which were the property of Richards, and upon his own statement this was in the prosecution of an agreement for a joint venture or a partnership between himself and Campbell for the purchase of said notes. If there was a joint venture or a partnership, why then it must follow that each of the parties to that joint undertaking in the prosecution thereof was the agent of the other. If we look at the transaction by which Richards' notes got into Humphreys' possession through the agency of Campbell as a case of undisclosed principal, still it follows that the testimony of the principal, Humphreys, should not have been stricken out. Upon this record it is impossible to pass upon the ultimate rights and obligations of the parties, because by the action of the

court in striking out Humphreys' testimony, in view of the fact that Richards had had no personal transactions with Humphreys, it became impossible to prove the case.

As we are of the opinion that it was error to strike out Humphreys' testimony, we think this judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.   All concur.